IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Edison Parra, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the DEA and, as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. As a Special Agent with the DEA, I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, distribution of controlled substances, and importation of controlled substances, and with the associated conspiracies in violation of Title 21, United States Code, Sections 841, 843, 846, 952, and 963. I have received detailed instructions and conducted various complex investigations concerning the unlawful importation and distribution of controlled substances, the laundering and concealment of drug proceeds, the illegal use of communication facilities by drug traffickers in furtherance of their criminal activities and conspiracies to engage in these activities. I have experience conducting surveillance operations, analyzing telephone records, interviewing witnesses, executing search and arrest warrants, participating in wire and electronic physical surveillance and other investigative techniques. The investigations in which I have participated have resulted in the arrest, prosecution and conviction of individuals who have smuggled, received and distributed controlled substances, including marijuana and cocaine, as well as the seizure of those illegal drugs and proceeds of the sale of those illegal drugs.

3. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

4. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other law enforcement officials; and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

5. Based on my training and experience, my knowledge of this case, and my discussions with other law enforcement officers, I am familiar with narcotic traffickers, money launderers' methods, schemes, and operations, and know the following facts.

### FACTS IN SUPPORT OF PROBABLE CAUSE

6. On July 20, 2025, the Drug Enforcement Administration (DEA) Task Force Group 3 (TFG-3) received information from the Direccion Nacional de Control de Drogas (DNCD) from the Dominican Republic, that a suspicious vessel had departed the Casa de Campo Marina in La Romana, Dominican Republic at approximately 6:00 a.m. and was en route to St. Thomas, USVI, according to the dispatch documents presented when the vessel was leaving the Casa de Campo Marina. The vessel was described as a white, thirty-eight-foot, sport fisher-style vessel bearing Puerto Rico Registration PR-1276-GG and the name "Pescadora 38." It had two (2) U.S. Citizens onboard, identified as Juan Gabriel PIMENTEL-Soto (the captain) and

Samuel RIVERA-Torres. Subsequently, the DEA passed along the information received from the DNDC to other U.S. Law Enforcement agencies and assets patrolling the western coast of Puerto Rico.

7. At approximately 9:30 a.m., the Customs and Border Protection (CBP) assets detected a Surface Target of Interest (the TARGET VESSEL) approximately six (6) nautical miles west of Mona Island, Puerto Rico, and traveling in an easterly heading towards the main island of Puerto Rico. CBP assets continued to track the TARGET VESSEL while relaying its position, course, and speed to marine interdiction assets.

8. At approximately 12:00 p.m., CBP marine interdiction assets were deployed to the location of the TARGET VESSEL. At approximately 12:20 p.m., the marine interdiction assets positively obtained visual of the TARGET VESSEL and, with police lights and sirens, they conducted a vessel stop of the TARGET VESSEL at approximately five (5) nautical miles west of Cabo Rojo, Puerto Rico. Subsequently, the marine interdiction agents identified the occupants of the vessel as **Juan Gabriel PIMENTEL-Soto** (the captain) and **Samuel RIVERA-Torres.** The occupants stated that they had departed from the Casa de Campo Marina in the Dominican Republic and were en route to the Villa Marina in Fajardo, Puerto Rico. At that time, the marine interdiction agents instructed PIMENTEL-Soto to navigate to the CBP marine unit in Cabo Rojo, Puerto Rico for a border search inspection.

9. During the border search of the TARGET VESSEL, a U.S. Border Patrol trained narcotics canine (K-9) conducted a free air sniff of the inside of the TARGET VESSEL and positively alerted to the presence of narcotics coming from behind the stair/steps portion of the vessel that connect the common area (living room) to the sleeping quarters of the TARGET VESSEL. During a more detailed search of the area, agents found two hundred and thirty-six (236) brick-

shaped packages of a white powdery substance that field tested positive for the properties of cocaine and weighed approximately 263.9 kilograms. The packages were hidden behind the wall, directly underneath the abovementioned stairs/steps. Additionally, three (3) cellphones and a global positioning system (GPS) were also seized.

10. The two occupants were arrested and read their Miranda rights in the Spanish language. Both stated that they understood their constitutional rights and voluntarily waived them. During post Miranda interviews, both individuals admitted to departing from the Casa de Campo Marina, in the Dominican Republic, and heading toward Puerto Rico. RIVERA-Torres denied any knowledge of the narcotics onboard the TARGET VESSEL. PIMENTEL-Soto admitted that he knew there were narcotics onboard the TARGET VESSEL.

11. Based on my experience, the quantity of cocaine of 263.9 kilograms (total package weight of 276.9 kilograms) is not for personal consumption, but is rather for distribution.

[*Intentionally Left Blank*]

**CONCLUSION**

12. Based upon my training, experience, and the abovementioned facts, I believe that sufficient probable cause exists to demonstrate that: PIMENTEL-Soto and RIVERA-Torres, have committed the following violation of Federal Laws: **Conspiracy to Possess with Intent to Distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II, Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii), and 846; and Possession with Intent to Distribute Cocaine Aboard a Vessel of the United States, in violation of Title 46, United States Code, Section 70503(a)(1).**

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

EDISON PARRA SALGUERO
Digitally signed by EDISON PARRA SALGUERO
Date: 2025.07.21 14:28:46 -04'00'

_____
Edison Parra
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone at 2:53 PM on July 21, 2025.

_____
HONORABLE HÉCTOR RAMOS VEGA
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

5